Matter of Black (2025 NY Slip Op 04174)

Matter of Black

2025 NY Slip Op 04174

Decided on July 16, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 16, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
VALERIE BRATHWAITE NELSON, JJ.

2020-05522

[*1]In the Matter of Bernard S. Black, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Bernard S. Black, respondent. (Attorney Registration No. 1954403)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on October 31, 1984.

Courtny Osterling, White Plains, NY, for petitioner.
Sarah Diane McShea, New York, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition dated July 17, 2020, and a verified petition dated July 16, 2020. The petition stated that the Grievance Committee intended to move for an order to apply the doctrine of collateral estoppel in this proceeding and bar the respondent from relitigating the issues determined by an order of the District Court, Denver County, Colorado, a probate court (hereinafter the Colorado Probate Court), dated September 28, 2015, and an order of the Court of Appeals of Colorado dated January 25, 2018, affirming the Colorado Probate Court order, both of which were incorporated into the petition (hereinafter together the Colorado court orders). Prior to answering the Grievance Committee's petition, the respondent moved by order to show cause, inter alia, to direct the Grievance Committee to specify the factual findings and legal conclusions contained in the Colorado court orders to be accorded collateral estoppel effect, and to extend his time to answer or, in the alternative, to hold the proceeding in abeyance pending the resolution of probate proceedings in the Surrogate's Court, Westchester County. The Grievance Committee cross-moved to deem the petition charges established based on the respondent's default in filing an answer and to impose such discipline upon the respondent as this Court may deem appropriate or, in the alternative, for this Court to apply the doctrine of collateral estoppel in this proceeding as to the findings in the Colorado court orders.
By decision and order dated June 7, 2022, this Court granted that branch of the respondent's motion which was to extend his time to answer and otherwise denied the respondent's motion. This Court also granted that branch of the Grievance Committee's cross-motion which was for this Court to apply the doctrine of collateral estoppel in this proceeding and barred the respondent from relitigating any of the factual specifications in charge one of the petition, including the Colorado court orders, and otherwise denied the Grievance Committee's cross-motion. The [*2]respondent, through counsel, served and filed a verified answer dated August 15, 2022, in which he essentially admitted to the factual specifications of the petition, denied the legal conclusions therein as to charges one through five, and admitted charge six.
By decision and order dated November 15, 2022, this Court referred the matter to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. A prehearing conference was conducted on January 18, 2023, and a hearing was conducted on March 28, 2023, and April 13, 2023. Following the hearing, the Grievance Committee withdrew charge five of the petition. In a report dated July 20, 2023, the Special Referee sustained charges one through four and charge six of the petition and found that "[t]here was no showing that [the respondent] acted with venal intent."
The Grievance Committee now moves to confirm the Special Referee's report insofar as it sustained charges one through four and charge six of the petition; disaffirm the report insofar as it determined that the respondent acted without venal intent; and impose such discipline upon the respondent as this Court deems just and proper. The respondent cross-moves to confirm the Special Referee's report insofar as it sustained charge six and found substantial evidence in mitigation, including the lack of evidence of venal intent; disaffirm the report insofar as it sustained charges one through four of the petition; and to impose a public censure, a short suspension, or a suspended suspension with conditions specified by this Court. The Grievance Committee submits an affirmation in opposition to the respondent's cross-motion and in further support of its motion, and the respondent submits a reply affirmation in further support of his cross-motion.
In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained charges two through four and charge six of the petition, and those charges are sustained. However, we find that the Special Referee improperly sustained charge one, and that charge is not sustained. Based on the record, the proper sanction is disbarment.
The Petition 
Charges two through four and charge six of the petition are based on the following facts:
At all times relevant to the petition, the respondent was a professor at Northwestern University School of Law and Kellogg School of Management in Chicago, Illinois, where he maintained an office. The respondent has a younger sister, Joanne, who suffers from chronic schizophrenia and cannot manage her own financial affairs. At all relevant times, Joanne was a resident of Colorado.
Shortly before her death in 2021, Renata Black, who was the mother of the respondent and Joanne, amended her estate plan, among other things, by causing certain accounts containing approximately $2 million to become payable to Joanne upon Renata's death (hereinafter POD), instead of having the funds go through a supplemental needs trust (hereinafter the SNT) that was created for Joanne's benefit. Contemporaneously, Renata changed the disposition of approximately $1 million that initially was to have gone into an Issue Trust (hereinafter the IT) that benefitted the respondent and his children. As a result of these amendments, approximately $3 million would be left directly to Joanne, payable in full upon Renata's death.
After Renata's death, the respondent, who was a successor co-trustee of the SNT, petitioned for and gained appointment as Joanne's conservator in Colorado. As Joanne's court-appointed fiduciary, the respondent disclaimed the POD dispositions on Joanne's behalf, so that the funds would revert to Renata's estate and be diverted to the SNT. Through this disclaimer, the respondent directed approximately two thirds of the POD funds to the SNT, and one third of the POD funds to the IT, according to Renata's will. As a result, Joanne's distribution was reduced by approximately $1 million, which the respondent had redirected to the IT for the benefit of himself and his children.
Following contested proceedings and an evidentiary hearing before the Colorado Probate Court, the Honorable Elizabeth D. Leith determined that the respondent engaged in substantial wrongdoing in his role as Joanne's conservator. The Colorado Probate Court found as follows:
"The Court finds, after evidentiary hearing that [the respondent] did not properly disclose to this Court that he intended to use the disclaimer to redirect one-third of the non-probate assets to persons other than [Joanne] and as a result of his failure to disclose, did not have authority to redirect the assets. The Court finds the disclaimer was obtained without providing full disclosure and therefore should not have divested [Joanne] of one-third of the POD assets left to her. The Court finds [the respondent's] actions constitute a breach of his fiduciary duty as conservator and that the appropriate [*3]remedy is surcharge. The Court finds [the respondent] did violate the Court's order directing that estate funds not be used to pay attorney and other fees pending final hearing but also finds that [the respondent] did return the majority of funds he paid to his attorneys in violation of Court's order, which funds were held in counsel's trust account. The Court finds [the respondent's] actions do meet all of the elements of civil theft and that as a sanction he should be assessed treble damages and pay for the costs of the action and reasonable attorney fees. Finally, the Court finds [the respondent] did not report [Joanne's] assets as they existed on the date of his appointment, December 11, 2012 but instead reported her assets as they existed after he disclaimed the POD funds on her behalf and redirected one-third of her assets into the Issue Trust."
Concerning the respondent's duties as a fiduciary, the Colorado Probate Court held:
"As noted above, [the respondent] never specifically requested through petition or separate motion permission to disclaim assets. The only references to the disclaimer were made through verbiage inserted into the proposed orders of appointment. The petition stated that Renata Black had changed the beneficiary designations on certain assets and as a result, those assets passed outright to Joanne [ ] rather than passing into the Supplemental Needs Trust. Regardless of verbiage referencing the manner in which Renata Black's residuary estate was to be divided, the language regarding the POD designations states the assets passed outright to Joanne Black rather than passing into the SNT which is a clear indication of intent to transfer all POD assets into the SNT.
* * *
"[The respondent], through his petition for appointment as conservator and the Court's orders, is a fiduciary for Joanne [ ]. [The respondent] also had fiduciary responsibilities to Joanne [ ] as the Executor of Renata Black's Will and as a [successor] co-trustee for the SNT. [The respondent] failed to disclose to the Court, [Joanne, Joanne's guardian ad litem, her court appointed counsel, and others] that he intended to divert one-third of the POD assets into the Issue Trust which benefitted himself and his children, thereby breaching his fiduciary duties to . . . Joanne [ ]. As a result, the sum of $1,511,356.00 was not transferred into the SNT. [The respondent's] breach of his fiduciary duty was the sole reason these funds were not placed into the SNT."
With regard to the respondent's conflicted interests, and deceptive, bad-faith conduct, the Colorado Probate Court found as follows:
"The Court finds [the respondent] had a clear conflict of interest regarding the funds held in the POD accounts. [The respondent] is also the Executor of the probate estate and a successor trustee for the SNT. [The respondent] and his children are beneficiaries under the Issue Trust. None of this information was disclosed to the Court, to the [guardian ad litem] or [Joanne's court appointed counsel]. Based on [the respondent's] own testimony that he disclosed in the information 'in effect' and that it was 'implicit' displays his intention that the full facts not be plainly disclosed. Of even more concern, [the respondent] testified he deliberately chose to file the inventory and financial plan after he had already disclaimed the funds, despite the statutory requirement that the inventory reflect [Joanne's] assets as of the date of appointment. At no time did [the respondent] disclose the entirety of [Joanne's] estate to the Court. The Court finds the actions taken by [the respondent] based in part on his own testimony were deceptive and undertaken in bad faith."
Concerning the respondent's conduct during the proceedings, the Colorado Probate Court found as follows:
"Without a doubt, [the respondent] knew the funds designated in POD accounts to Joanne [ ] and his children did not belong to him. [The respondent] developed a plan to divest Joanne [ ] and his children of the funds specifically left to them by Renata Black. To carry out that plan, [the respondent] deliberately withheld full disclosure of his intention to this Court when he sought and received permission to disclaim the funds. [The respondent] never advised this [C]ourt the POD accounts at issue were left in part to his children and he never advised this Court the Issue Trust or [a certain] Roth IRA existed. The dilemma [the respondent] found himself in was never explained to any [c]ourt until these contested proceedings were held. The Court therefore finds [the [*4]respondent] knowingly obtained and exercised control over the POD account funds without authorization and by deception."
Regarding the Roth IRA account, at the time of Renata's death, the account contained more than $300,000, which the respondent diverted to his children.
Based upon the respondent's breaches of his fiduciary duty, the Colorado Probate Court, inter alia, revoked his letters and removed him as conservator for Joanne; surcharged the respondent the sum of $1,511,356, representing the full amount of the disclaimed funds, at 8% per annum statutory interest; ordered the respondent to bear all costs, fees, and attorney fees incurred to prosecute the matter; and assessed treble damages based in civil theft in the sum of $4,534,068, payable to Joanne, also at the statutory rate of 8% per annum. The Colorado Probate Court decreed that the judgment based in civil theft is not dischargeable in bankruptcy.
The respondent appealed the Colorado Probate Court's order to the Court of Appeals of Colorado, which affirmed the order and subsequently denied rehearing. The Colorado Court of Appeals held that the respondent, "by his own admission, at every stage of the proceeding . . . failed to disclose his substantial conflict of interest." The Colorado Court of Appeals continued:
"From its inception, the integrity of the conservatorship was undermined by [the respondent's] undisclosed conflict. [The respondent] admitted that he sought the appointment as conservator for the purpose of disclaiming Joanne's interest in the POD assets so that they could be redistributed in accordance with his and his children's expectations of his mother's estate plan. He agreed that the 'interests of [his] children were in tension with the interest of Joanne [ ],' and that this 'tension' amounted to a conflict of interest. But he did not tell the probate court that he was laboring under this conflict of interest when he filed his petition to be appointed as Joanne's conservator. . . .
"Nor did [the respondent] disclose the existence of a conflict of interest at the time he requested authorization to disclaim Joanne's assets, even though he knew that 'taking one-third of [Joanne's] assets for the benefit of [him] and [his] children was a conflict.' At the evidentiary hearing, [the respondent] admitted that he never told the probate court that 'he faced a conflict' as conservator seeking to disclaim Joanne's assets.
* * *
"[The respondent] contends that the court had a duty to synthesize all of the disparate disclosures and infer from the information that [he] intended to redirect one-third of Joanne's assets for his own benefit. But as the Seventh Circuit has famously admonished, '[j]udges are not like pigs, hunting for truffles buried in' the parties' submissions. United States v. Dunkel , 927 F2d 955, 956 (7th Cir. 1991). No document or statement submitted during the course of the proceedings mentioned that Joanne's disclaimed POD assets would be redistributed, in part to a trust of which [the respondent] and his children were beneficiaries.
"The fiduciary has 'an affirmative duty to disclose material information' about a conflicted transaction. Reinstatement 3d Trusts § 78 cmt. c[1]. We conclude that the record fully supports the probate court's finding that [the respondent] failed to satisfy this duty.
* * *
"[The respondent's] conservatorship lawyer acknowledged that the disclaimer 'harmed' Joanne because 'instead of $3 million for her lifetime, she now only has two,' and '$3 million . . . is clearly better than $2 million.' To be sure, [the respondent] testified that he believed the disclaimer benefitted Joanne. But the court was not obliged to accept his self-serving testimony, particularly because [the respondent] admitted that he did not consider any alternative to disclaiming and then redistributing Joanne's assets for his own benefit. He did not, for example, seek any advice concerning options for protecting Joanne's interest in the POD assets. Nor did he consider, once the assets were diverted into the Issue Trust, transferring Joanne's share of the assets back into the SNT.
"In sum, [the respondent] failed to disclose the conflicted transaction to the court and also failed to establish that the transaction, though conflicted, was nonetheless reasonable and fair to Joanne. Accordingly, the court did not err in finding that [the respondent] breached his fiduciary duties."
The Supreme Court of Colorado, en banc, denied the respondent's petition for a writ of certiorari.
Based on the foregoing, charge two of the petition alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of rule 8.4(c) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge three alleges that the respondent made false statements of fact or law to a tribunal or failed to correct a false statement of material fact or law previously made to the tribunal, in violation of rule 3.3(a)(1) of the Rules of Professional Conduct. Charge four alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of rule 8.4(d) of the Rules of Professional Conduct. Charge six alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing and Hearing Record 
The respondent testified that he helped care for Joanne throughout her life, purchasing a cooperative apartment for her, where she lived for approximately 15 years, and paying other living expenses for her over the years. The respondent stated that although he should have been more clear in his communications with the Colorado Probate Court, his objective in disclaiming the POD funds was not to divest Joanne of her inheritance, but rather to ensure that she was financially secure for the rest of her life, particularly by placing the POD funds in trust for her and securing workers' compensation and Social Security Disability payments for her benefit. The respondent testified that he was under significant time pressure to address the approximately $3 million in POD funds that would be paid directly to Joanne, as he and his family agreed that Joanne was likely to squander the funds upon receipt.
The respondent explained that his adult children, having been promised financial help with their graduate school tuition by their grandmother, Renata, believed the changes to her estate were a mistake, and wanted to sue to invalidate them. The respondent believed that such intra-family litigation would have been "a disaster" for Joanne, in part because her funds would be frozen.
The respondent also claimed that he acted under the advice of counsel, who assured the respondent that his disclosure to the Colorado Probate Court was sufficient. Nevertheless, the respondent admitted that, although he intended to be fully transparent, he was not sufficiently clear in his communication with the Colorado Probate Court, among other things, in that he failed to mention his conflict of interest and did not explicitly explain the two-thirds/one-third distribution of the POD accounts to the SNT and the IT, respectively. With regard to the Roth IRA, the respondent claimed that he paid the funds therein directly to his children, which gave them certain tax advantages that were unavailable if the Roth IRA funds were paid to Joanne. The respondent stated that he compensated Joanne with other funds from Renata's estate to offset the value of the Roth IRA. Notwithstanding his diversion of approximately $1 million to the IT for the benefit of himself and his children, the respondent testified that he "did not receive any personal benefit" from his actions as Joanne's conservator.
The Special Referee's Report 
In his report, the Special Referee sustained charges one through four and charge six of the petition and stated that the fact that the respondent's misconduct occurred outside of his practice of law was inconsequential. In mitigation, the Special Referee noted that the respondent acknowledged that he should have provided more comprehensive disclosure to the Colorado Probate Court and that he took full responsibility for his failure to do so. The Special Referee also noted that seven law professors provided character evidence attesting to the respondent's reputation for honesty, integrity, and trustworthiness; that the respondent has an outstanding legal background from law school and throughout his career teaching at several top universities; and that the respondent is an empirical legal scholar who has authored many articles and books. The Special Referee further found in mitigation that the respondent was monetarily penalized by the Colorado Probate Court, and that the respondent provided evidence that he played an important role in supporting his sister. Lastly, the Special Referee found that "[t]here is no showing that [the respondent] acted with venal intent."
The Grievance Committee for the Ninth Judicial District now moves to confirm the report of the Special Referee insofar as it sustained charges one through four and charge six; to disaffirm the report insofar as it determined that the respondent acted without venal intent; and to impose such discipline as this Court deems just and proper. The Grievance Committee contends that the Special Referee's finding regarding an absence of venal intent is inconsistent with the findings [*5]of the Colorado courts and this Court has determined that the doctrine of collateral estoppel bars the relitigation of this issue. The Grievance Committee reports that the respondent has no disciplinary history.
The respondent cross-moves to affirm the Special Referee's report insofar as it sustained charge six and found substantial evidence in mitigation, including a lack of venal intent; disaffirm the report insofar as it sustained charges one through four; and to impose a public censure, a short suspension, or a suspended suspension with conditions specified by the Court. The respondent contends, inter alia, that the Special Referee's finding on venality should stand due to the Special Referee's in-person assessment of the respondent's motives, credibility, and good faith. In his submissions to the Special Referee and to this Court, the respondent argues that the Court's collateral estoppel order applies only to the factual specifications of the petition, and does not apply, among other things, to the Colorado Probate Court's legal conclusions, including those regarding the respondent's motives and intent.
We find the respondent's contentions are without merit as the factual specifications of the petition include all of the findings, legal and factual, by the Colorado court orders as stated above. What is not covered by this Court's collateral estoppel order, and remains to be determined, is whether the facts, including the determinations of the Colorado courts, constitute violations of the Rules of Professional Conduct by the respondent. We find that they do.
Findings and Conclusion 
In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained charges two through four and charge six of the petition, and should not have sustained charge one. Accordingly, those branches of the Grievance Committee's motion which were to confirm the report of the Special Referee insofar as it sustained charges two through four and charge six, and to disaffirm the Special Referee's report insofar as it found that the respondent acted without venal intent, are granted. That branch of the Grievance Committee's motion to confirm the Special Referee's report insofar as it sustained charge one is denied, and charge one is not sustained. Those branches of the respondent's cross-motion which are to disaffirm the Special Referee's report insofar as it sustained charge one, and to confirm the Special Referee's report insofar as it sustained charge six are granted, and the respondent's cross-motion is otherwise denied.
With regard to charges two through four and charge six, the Colorado Probate Court found, and the Colorado Court of Appeals affirmed, that the respondent deliberately failed to disclose his conflict of interest, submitted a conservator's inventory only after a disclaimer rather than at the time of his appointment, failed to disclose his intention to divert approximately $1 million to the IT for the benefit of himself and his children, and failed to report the existence of the Roth IRA to the Colorado Probate Court. These determinations may not be disturbed or relitigated, based on this Court's collateral estoppel order, which incorporated the findings of the Colorado court orders, and they are sufficient to sustain these four charges in the petition.
In determining an appropriate measure of discipline, we consider that the respondent, an esteemed professor and empirical legal scholar, attempted to deprive his schizophrenic sister of approximately $1 million from their mother's estate, and in his effort to do so, withheld information from the Colorado Probate Court, in bad faith. Despite the findings of the Colorado courts, and this Court's collateral estoppel order, the respondent continues to defend his actions as being in Joanne's best interests, notwithstanding that these same actions would have cost Joanne approximately $1 million to which she was entitled.
This Court has considered evidence submitted by the respondent of his honesty and integrity, provided by several highly regarded law professors, some of whom are professionally associated with the respondent. The Court also has considered evidence submitted by the respondent that he has provided important support to his sister, Joanne, throughout their lives.
Under the totality of the circumstances, we find that disbarment is warranted.
LASALLE, P.J., DILLON, DUFFY, BARROS and BRATHWAITE NELSON, JJ., concur.
ORDERED that the branches of the Grievance Committee's motion which are to confirm the Special Referee's report insofar as it sustained charges two through four and charge six, and to disaffirm the Special Referee's report insofar as it found that the respondent acted without venal intent are granted; and it is further,
ORDERED that the branch of the Grievance Committee's motion which is to confirm the Special Referee's report insofar as it sustained charge one is denied; and it is further,
ORDERED that the branches of the respondent's cross-motion which are to confirm the Special Referee's report insofar as it sustained charge six and to disaffirm the Special Referee's report insofar as it sustained charge one are granted, and the respondent's cross-motion is otherwise denied; and it is further,
ORDERED that the respondent, Bernard S. Black, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Bernard S. Black, shall comply with this Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Bernard S. Black, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Bernard S. Black, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court